986 F.2d 502
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well.
Carl FLETCHER, Plaintiff-Appellant,
Aaron BEASLEY; Stephen Cook, Plaintiffs,
v.
Dick MOORE; George Lombardi; Bill Armontrout; Donald
Cline; Robert Acree; Richard Childs, Major; James Eberle,
Major; Bob Faith; Charles Smith, Food Serv Manager; Donald
Edwards; Roger Boyd; Paul Delo; Jim Stubblefield,
Caseworker, Potosi Correctional Center; Dale Riley; Ronda
Pash, Defendants-Appellees.
Carl FLETCHER, Plaintiff,
Aaron BEASLEY; Stephen Cook, Plaintiffs-Appellants,
v.
Dick MOORE; George Lombardi; Bill Armontrout; Donald
Cline; Robert Acree; Richard Childs, Major; James Eberle;
Bob Faith; Charles Smith, Food Serv Manager; Donald
Edwards; Roger Boyd; Paul Delo; Jim Stubblefield,
Caseworker, Potosi Correctional Center; Dale Riley; Ronda
Pash, Defendants-Appellees.
 Nos. 92-2568, 92-2383.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: December 23, 1992.
Filed: February 3, 1993.
 
 Before JOHN R. GIBSON, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Carl Fletcher, Aaron Beasley, and Stephen Cook, Missouri inmates, appeal from the district court's[1] grant of summary judgment to defendants and denial of their cross-motion for summary judgment in their civil rights action. We affirm.
 
 
 2
 In July 1990, a number of inmates at the Missouri State Penitentiary (now known as the Jefferson City Correctional Center) who were Muslims or members of the Moorish Science Temple became dissatisfied with the amount of access they were permitted to the prison's All-Faith Chapel. On July 25, 1990, approximately 100 of these inmates congregated at the chapel to express their disapproval. Some of the inmates, including plaintiffs, were agitated and made disruptive comments. After prison officials instructed the inmates to disperse, they continued to regroup in the prison yard. Prison officials later discovered that equipment kept at the chapel, including a television set and a video cassette recorder, had been vandalized.
 
 
 3
 On the evening of July 26, 1990, plaintiffs were placed in temporary administrative segregation. The next morning, they received conduct violations for violating prison Rule 6-inciting to riot. The conduct violation reports reflected that an internal investigation had revealed that plaintiffs conspired "to congregate and create a riotous situation." Because prison officials perceived the situation to be an emergency which jeopardized institutional security, the adjustment board hearing was held that same morning (rather than the usual minimum of twenty-four hours after notice of the charges). Plaintiffs were found guilty of the conduct violations, based on the conduct violation reports and the testimony of officers who had witnessed the events. As a result of these findings of guilt, plaintiffs were transferred to Potosi Correctional Center (Potosi), where they were placed in administrative segregation. No other punishment was imposed.
 
 
 4
 Plaintiffs then filed this civil rights action against various employees of the Missouri Department of Corrections. They claimed that their constitutional rights were violated when they were falsely charged with the Rule 6 conduct violations; they were not given twenty-four hours notice of the charges prior to the adjustment board hearing; the notices were insufficiently specific to inform them of the charges, which hampered their ability to marshal the facts and prepare defenses; investigative reports were improperly withheld from them; the adjustment board failed to provide sufficient written statements of the evidence relied on in reaching the decisions; their convictions were not supported by "some evidence"; they were not allowed to call witnesses or given reasons for these denials; after their transfer to Potosi, some grievances they filed were not addressed; they were not permitted religious reading material at Potosi; after defendant Donald Cline expunged Fletcher's Rule 6 conduct violation as a final resolution to one of his grievances, he was kept in administrative segregation for an additional two weeks before being released into the general population; after defendant Bill Armontrout later overruled this expunction, Fletcher was returned to administrative segregation without a new hearing; and, after all three conduct violations eventually were expunged through the grievance procedure, the plaintiffs were kept in administrative segregation for an additional period. Plaintiffs further claimed that their equal protection rights were violated when two of the eight inmates charged with violating Rule 6 for the same conduct were treated more leniently than they were, and that Armontrout's overruling of Cline's expunction constituted a breach of contract. They sought declaratory and injunctive relief, as well as damages. They also sought a temporary restraining order and a preliminary injunction.
 
 
 5
 After plaintiffs filed administrative grievances, and while this action was pending below, defendants conceded in a grievance response that they had erred in not giving plaintiffs twenty-four hours notice prior to the adjustment board hearing. To rectify this procedural error, defendants expunged the Rule 6 conduct violations from plaintiffs' classification files.
 
 
 6
 We conclude that the district court correctly granted summary judgment to defendants and denied plaintiffs' cross-motion for summary judgment. Even assuming that plaintiffs' claims of procedural due process violations concerning the adjustment board hearing are valid, plaintiffs suffered no harm. Based on the results of their investigation, defendants could properly have placed plaintiffs in administrative segregation as an immediate threat to institutional security without charging them with any rule infraction. See Mo. Rev. Stat. § 217.375.1 (Supp. 1991). Defendant Armontrout described the nature of the security threat in an October 5, 1990 memorandum to a grievance officer:
 
 
 7
 The transfers were made under emergency conditions due to the Islamic unrest within the institution. There were several incidents of vandalism in the All Faith Chapel where Islamic services were being moved to for staff supervision. All indications were that a riotous condition existed endangering staff, inmates, and state property.
 
 
 8
 Further, the expunction of the violations from plaintiffs' classification files removed any possibility of the violations adversely affecting plaintiffs in the future. We conclude that plaintiffs' remaining claims lack merit.
 
 
 9
 Accordingly, we affirm.
 
 
 
 [1]
 The Honorable Scott O. Wright, Senior United States District Judge for the Western District of Missouri